Haywood, J.
This is an action of debt upon a bill single, to pay to the plaintiff six hundred and twenty-nine dollars in current bank notes; the breach assigned in the declaration is, that the defendants did not pay the said six hundred and twenty-nine dollars in current bank notes or in any other manner. The defendants craved oyer and set out the bill obligatory verbatim, and demurred.
First, because an action of debt for money will not lie.
Secondly, for a variance between the name in the declaration and in the bill single. Alex, in the one, and Alexander in the other.
Thirdly, because the demand is for six hundred and twenty-nine dollars, and the declaration states an obligation to pay in bank notes, and nothing else.
Fourthly, because the declaration is informal and wants substance. The plaintiff joined in demurrer, and it was sustained by the Circuit Court, and judgment given for the defendant that he go hence, &c., from which the plaintiff took an appeal in the nature of a writ of error to this Court, and now the main .question before the Court is, whether the action of debt be maintainable.
First, the meaning of the parties should be looked to, and,
. Secondly, the mode prescribed by law for its effectuation.
First, six hundred and twenty-nine dollars, in current bank notes, cannot mean six hundred and twenty-nine dollars in gold and silver coin, for then the words, “ in current bank notes,” are perfectly inoperative and useless. It was either intended that as many current bank notes should be paid as are equivalent in market value to the sum in gold and silver, or as are equal in- denomination or in nominal amount to that sum. The provision to pay in notes is for the benefit of the defendant, and this consideration determines the meaning to be in favor of the nominal amount, which is of inferior value to the market price of six hundred and twenty-nine dollars, and is less burthensome by one fourth to the defendant. It is the same thing substantially, as if the expression had been six hundred and twenty-nine dollars of instead of in current bank notes. Had the expression been six hundred and twenty-nine dollars in notes of solvent persons *103 in the town of Knoxville, or of notes of solvent persons, when such notes in market were of fifty per cent less value than the same amount in gold or silver, the latter contract and the present one would be judged of by the same rule, and if the latter would not be a money contract, so neither would be the other. And in the latter instaface, all the plaintiff could ask in case of non-performance of the contract, would be as much money in gold or silver as would purchase notes on solvent men to the amount specified.
If twenty pounds be to be paid in watches, twenty pounds of money is due, because the number of watches is not ascertained, and their value in money being the value of twenty pounds it is useless to ascertain it by assessment. But if to be- paid in a certain number of identified watches, then the debtor ought to pay only as much as the specified number of such watches is worth, though the value should not amount to twenty pounds; 2 Ba. Ab-279 ; so, if to be paid in a horse certainly described, as the bay horse of B, with distinguishing marks of description, and that horse be not worth twenty pounds, should the obligee nevertheless be permitted to claim and to receive twenty pounds if the horse die before the day appointed for his delivery ? Suppose A hind himself to pay to B six hundred and twenty-nine dollars of Farmers and Mechanics’ Bank notes, which are out of circulation and of little or no value, would it be consistent with legal principle to say that the defendant, if the notes were not paid on the day appointed, should be. compelled by law to pay six hundred and twenty-nine silver dollars for six hundred and twenty-nine dollars of notes,'which are, perhaps, not worth more than fifty dollars of that sum ? The clear meaning of the contract in such case would be that the payment in silver should be regulated and its. quantum fixed by the market price of the notes, whereaá, in the rule contended for, the law would be made to pronounce directly the contrary, and would make the market price of the silver to regulate the quantum of notes ; and instead of six hundred and twenty-nine dollars of notes, the amount to be paid in notes would be esteemed possibly at ten times that sum. An offer to pay six hundred and twenty-nine dollars in notes on the day appointed for payment, and paying the same afterwards in Court for the acceptance of the plaintiff in pleading a tender to his action, though it would then be a perfect compliance in all things with the contract, on the part of the defendant, would still be of no effect towards discharging him from the payment of six hundred and twenty-nine dollars in silver, though that sum is ten times the value of the notes which he has tendered. There is no difference, in the intendment of the parties, between six hundred and twenty-nine dollars in notes and six hundred and twenty-nine dollars of notes. To make by construction such an immense difference between in and of, when in common acceptation their meaning is precisely the same, is a discrimination which, to say the least of it, is repugnant to justice, and *104 which is certainly incompetent to the attainment of any useful end. The case was put in argument of an obligation to pay six hundred and twenty-nine dollars in tobacco or corn. Most certainly the quantity of the article to be paid being unascertained must be fixed by the market price it bears, and the amount be ascertained by the sum in silver which it is to discharge. But, when it is six hundz-ed and twenty-nine dollars in notes, these being of a distinct natui’e, specified on the face, and being by common and general usage estimated by the nominal, and not by the market value, are likewise so to be estimated in the construction of contracts. The contract concerning them is precisely assimilated to one for the payment of one hundred dollars in the horse of B, who won such a race at such a place, the horse being worth not more than fifty dollars. I think it certain, in the present case, that the terms in “ current bank notes ” inserted in this instrument was meant of current notes, as the same purported in the face to be worth, and to be estimated by the expressed denomination, not by the market value. That the intent was to reduce the sum in silver by the real value of the notes, not to enhance the quantum of notes by the real value of the money expressed. Great, it is said, will be the evils to society should any such reduction of the money be attempted. I cannot foresee them nor conceive of them. I have never witnessed any pernicious result to the public from justice done between individuals, and, therefore, I am the more encouraged in pursuing the maxim, “fiat justitia ruat ccelum.”
This being the meaning of the contract, it is next to be inquired, is there any action framed by the law for the effectuation of this meaning. If foreign money is to be paid it may be sued for in debt, demanding so much currency as is the value of the foi’eign money, or in debt, in the debet and detinet, demanding the foreign money and leaving the jury to assess the value; 2 Ba. Ab. 287, and the cases there cited; or it might, as this case is circumstanced, be sued for in covenant, where, also, the real value could be ascertained by the verdict of a jury. So, if the bill single were for notes on the Bank of England, the action might be in the same foi'm. So, for notes here, either current or not current, or whether of banks or of individuals, so as to let in the valuation of a jury, and to accommodate the quantum to be recovei’ed to the value of the notes which were to have been paid.
I am of opinion that the judgment of the Circuit Court, for sustaining the demurrer to this action, should be affirmed.
Whyte and Bnovra, JJ. (Peck absent), were of a contrary opinion, and reversed the judgment of the Circuit Court, and gave judgment for the six hundred and twenty-nine dollars.
At a subsequent time, the greater part of the bar applying for a reconsideration of this subject, and urging the great injury which individuals in this section of the counti-y must suffer, should the present construction of this instrument be permanently established, the Court took time to reflect *105 upon the application, and, before the final adjournment of the Court, ordered the judgment which they had given to be suspended, and the cause to be reserved for further consideration.
Note. —We learn from the preface to this* volume, that this cause was finally determined in accordance with Judge Haywood’s opinion.— Ed.